## STATE *vs.* CHARLES T. McCLURE

1. WAR—LEGISLATIVE POWER OF STATE.

The several states have power to enact legislation to aid the federal government while it is at war with a foreign country; such power not being denied, either expressly or by implication, by *Const. U. S. art.* 1, § 8, or other constitutional provisions.

2. CONSTITUTIONAL LAW—INVOLUNTARY SERVITUDE—WAR MEASURES.

*Council of Defense Law*, §§ 4, 5, requiring men between ages of eighteen and fifty-five to be engaged in some lawful or useful occupation, is not, in view of its character as a war measure in stimulating production of food and war supplies, and its object to preserve order, as expressed in *section* 1, violative of *Const. U. S. art.* 13, §§ 1, 2, prohibiting involuntary servitude, except as punishment for crime, or *article* 14, § 1.

(*January* 7, 1919.)

.RICE and HEISEL, J. J., sitting.

*P. Warren Green*, Deputy Attorney-General, for the State.

*Levin Irving Handy* for the defendant.

Court of General Sessions, New Castle County, September Term, 1918. Opinion handed down January Term, 1919.

INDICTMENT No. 72, September Term, 1918.

Charles T. McClure, was indicted for the violation of the *Council of Defense Law*, §§ 4, 5. On motion to quash indictment. Denied.

Charles T. McClure was indicted in substance as follows:

"That he unlawfully did refuse to obey an order of the State Council of Defense, he, the said defendant, then and there being between the ages of eighteen and fifty-five years and not being employed in a useful and lawful occupation; and the said Charles T. McClure heretofore having been assigned by the said State Council of Defense to employment determined by the said State Council of Defense, against the form of an act of the General Assembly," etc.

Mr. Handy filed a motion to quash the above indictment on the ground that said statute under which the accused was indicted is contrary to the *Constitution of the United States, Article 13* and *Article 14*, being in the nature of involuntary servitude. The statute in question provides that every male citizen between the ages of eighteen and fifty-five shall be engaged in some lawful and useful occupation, and, if not so engaged, then the State Council of Defense shall assign him to such work as the council sees fit and at such wages as the employer and council may agree to, and, being so employed, let out or hired, he must do the work and render the service which has been arranged by the State Council of Defense, without any voluntary arrangement on his part at all, otherwise he becomes liable to indictment and, if convicted, to the penalties provided by the statute.

Mr. Handy cited in support of his motion the following authorities: *Joseph Thompson, Petitioner, v. J. T. Bunton,* 117 *Mo.* 83, 22 *S. W.* 863, 20 *L. R. A.* 462, 38 *Am. St. Rep.* 639; *Stone v. City of Paduca,* 120 *Ky.* 322, 86 *S. W.* 531; *In re Chung Fat et al.* (*D. C.*) 96 *Fed.* 202; *Robertson v. Baldwin,* 165 *U. S.* 275, 17 *Sup. Ct.* 326, 41 *L. Ed.* 715; *Civil Rights Cases,* 109 *U. S.* 3, 20, 3 *Sup. Ct.* 18, 27 *L. Ed.* 835; *Slaughter House Cases,* 83

*U. S.* 16 (*Wall.*) 36, 21 *L. Ed.* 394; *Clark's Case*, 1 *Blackf.* (*Ind.*) 122, 12 *Am. Dec.* 213; *Pavesich v. New England Life Insurance Co.*, 122 *Ga.* 190, 50 *S. E.* 68, 69 *L. R. A.* 101, 106 *Am. St. Rep.* 104, 2 *Ann. Cas.* 561.

P. Warren Green, Deputy Attorney General, replied, contending that the fourth and fifth sections of the Council of Defense Act under which the indictment is drawn are constitutional; that there is nothing new in those sections but that such provisions had existed from the common law down to the present time. Idleness has always been prohibited and punishable. 4 *Blackstone,* *169.

Idleness is also prohibited by the laws of the state of Delaware, and is punishable with imprisonment. *Rev. Code*, §§ 3535, 3541.

The section of the State Council of Defense Law, requiring every male between the ages of eighteen and fifty-five to be engaged in a useful or lawful occupation and prescribing a penalty for the violation thereof, is not in conflict with the Thirteenth Amendment, prohibiting involuntary servitude. *Selective Draft Law Cases*, 245 *U. S.* 366, at *page* 373, 38 *Sup. Ct.* 159, 62 *L. Ed.* 349, *L. R. A.* 1918C, 361, *Ann. Cas.* 1918B, 856; *United States v. Stephens* (*D. C.*) 245 *Fed.* 956, at *page* 964; *Angelus v. Sullivan,* 246 *Fed.* 54, at *page* 59, 158 *C. C. A.* 280; *United States v. Bell* (*D. C.*) 248 *Fed.* 992; *Butler v. Perry*, 240 *U. S.* 328, 36 *Sup. Ct.* 258, 60 *L. Ed.* 672; *Claudius v. Davie*, 175 *Cal.* 208, 165 *Pac.* 689; *Civil Rights Cases*, 109 *U. S.* 3, 20, 23, 3 *Sup. Ct.* 18, 27 *L. Ed.* 835; *Clyatt v. U. S.*, 197 *U. S.* 207, at *page* 216, 25 *Sup. Ct.* 429, 49 *L. Ed.* 726; *Peonage Cases* (*D. C.*) 123 *Fed.* 671, at *page* 681.

PER CURIAM: The defendant was indicted under what is known as the "Council of Defense Law of Delaware," approved by the Governor April eighth, 1918. *Sections* 4 and 5 of the act are as follows:

"*Sec.* 4.　It shall be the duty of every male resident of this state between the ages of eighteen and fifty-five years, who shall not be in the national army or a public officer, to be employed in a useful or lawful occupation during the said period, and every such person who shall not be so employed shall be subject to be assigned by the said council to such employment as

the said council shall from time to time determine and at such compensation to be paid by the employer as the said council and employer shall agree to be reasonable and proper: *Provided*, that the provisions of this act shall not apply to persons temporarily unemployed by reason of differences with their employers, nor to bona fide students during the school term, nor to persons fitting themselves to engage in trade or industrial pursuits.

"*Sec.* 5. Any resident of this state who shall refuse to obey or shall fail to comply with any order of the said council relating to any of. the provisions of this act shall be guilty of a misdemeanor, and upon conviction thereof shall be fined not more than three hundred dollars or imprisoned not exceeding three months, or both, at the discretion of the court: *Provided,* that all prosecutions under the provisions of this act shall be in the nature of an appeal, in which any matters which could have been urged by the defendant against the issuance of said order by the State Council of Defense may be used as a defense in said prosecution, the right of waiver of hearing and to bail being preserved in all cases, and all such prosecutions shall be handled expeditiously by the prosecuting officers and the court."

Upon a motion to quash the indictment he contends that said act is in violation of *Article* 13 and *Section* 1 of *Article* 14 of the *Constitution of the United States.*

*Article* 13 provides:

"*Sec.* 1. Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.

"*Sec.* 2. Congress shall have power to enforce this article by appropriate legislation."

*Section* 1 of *Article* 14 provides:

· "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

The objects to be attained by the Council of Defense Act were to provide effective means of defense, to preserve order within the state, to insure the maximum output of agricultural and industrial products, and the maintenance of vital enterprises during the period of the war in which the United States was then engaged. In order to assist in attaining these objects the act inter alia provided that:

Opinion.

"It shall be the duty of every male resident of this state between the ages of eighteen and fifty-five years who shall not be in the national army or a public officer, to be employed in a useful or lawful occupation during said period" (the war).

And if he is not so employed, the Council of Defense created by the act was given authority to assign him to employment and fix his compensation, which shall be reasonable and proper. Any such resident refusing to comply with the orders of the Council of Defense in that respect is guilty of a misdemeanor, and upon conviction, subject to be fined not more than three hundred dollars, or imprisoned not exceeding three months, or both in the discretion of the court.

Defendant's main contention is that such procedure is nothing less than involuntary servitude, and therefore contrary to *Article 13* of the *United States Constitution* and cites several cases in support of his contention. We shall not undertake a review of these cases further than to say that the several acts of the Legislatures therein reviewed were not enacted to meet the necessities of actual warfare between this country and foreign countries. Nor do we consider it necessary or important to determine what in times of peace may or may not constitute involuntary servitude as meant by the thirteenth article of the Constitution.

The Council of Defense Act is a war measure. It is true the Constitution of the United States in *Section* 8 of *Article* 1 among other things provides that Congress shall have power to declare war; to raise and support armies; to provide and maintain a navy; to make rules for the government and regulation of the land and naval forces; and to make all laws which shall be necessary and proper to carry into execution these powers; and that no state shall "engage in war unless actually invaded, or in such imminent danger as will not admit of delay"; but this does not mean that the several states shall not lend every reasonable assistance to the federal government to aid it against an enemy, in time of war.

[1] Unless the power of the several states to enact legislation beneficial to the federal government while it is at war with a foreign country is expressly prohibited by the Constitution or

such prohibition is a necessary implication from other powers granted to the federal government or denied to the states, the several states have such power.

We find nothing in the Constitution either expressed or implied which would deny to the several states such power.

[2] If then it be true that the state has the same power to enact legislation to aid in carrying on the war that a sovereign state would have, restricted only by the provision that there shall not be involuntary servitude except as a punishment for crime, do the provisions of the Council of Defense Act complained of impose such servitude, in view of the necessities incident to the carrying on of a great war? We are clearly of the opinion that it does not.

One of the objects of the act was to aid in winning the war by increasing the production of food and supplies and by saving the loss incident to the maintenance of those male citizens between the ages of eighteen and fifty-five who were engaged in no useful or lawful occupation. War cannot be carried on without food and supplies, nor can food and supplies be produced except by labor, and who are more able to labor than male citizens between the ages of eighteen and fifty-five?

One of the objects of the act, as expressed in *section* 1, was to preserve order within the state. The passage of the act compelling male residents of the state between the ages of eighteen and fifty-five to be employed during the period of the war and six months thereafter we believe was a reasonable exercise, under the circumstances, of the police powers vested in the Legislature. In *Webber v. Virginia*, 103 *U. S.* 344, 26 *L. Ed.* 565, the Supreme Court of the United States defined police powers to be "those powers by which the health, good order, peace, and general welfare of the community are promoted."

It is generally known that the demands of the national government in waging the present war have greatly curtailed the means of preventing crime and reduced the number of men available to protect the lives and property of the public. It was proper for the Legislature having this in mind to pass reasonable and just laws to preserve order within the state and to protect the lives

and property of those within its borders by providing that male residents between certain ages should be engaged in some useful or lawful occupation.

For the reasons stated, motion to quash the indictment is denied.

*NOTE—For valuable note upon the question of personal rights, civil, political, and religions, and of the power of the state to legislate in Federal matters, see Harvard Law Review, Vol. XXXIII, page 108.